*Formatted for Electronic Distribution*                    *Not for Publication*

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF VERMONT

**In re:**

    **CORYDON E. MOULTON,**      Case No. 25-10179
              **Debtor.**                  Chapter 7

Filed & Entered
On Docket
02/06/2026

### MEMORANDUM OF DECISION
### GRANTING IN PART AND DENYING IN PART DEBTOR'S MOTION TO AVOID JUDICIAL LIEN

This matter comes before the Court on Debtor's Motion to Avoid Judicial Lien on Real Estate and to Avoid a Trustee Process Order (the Motion).[1] In addition to the Motion, the Court has considered Debtor's exhibits to the Motion,[2] Debtor's supplement,[3] and Debtor's testimony at a hearing on January 27, 2026.

For the reasons set forth below, the Court determines the judgment lien should be partially avoided, and the Trustee Process Order should be avoided in its entirety.

### JURISDICTION

The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Order of Reference entered by the U.S. District Court on June 22, 2012. The Court declares this contested matter to be a core proceeding according to 28 U.S.C. § 157(b)(2)(K), over which this Court has constitutional authority to enter a final judgment.

### BACKGROUND

Debtor owns real property located in Morgan, Vermont (the Property), in which he claims a homestead exemption of $125,000.[4] This matter arises out of state court litigation between Debtor and John

---

[1] ECF 6.

[2] ECF 9.

[3] ECF 10.

[4] ECF 1; 6. According to the Town of Morgan's tax records, the Property consists of 5.5 acres. ECF 6.

1

Deere Financial, FSB (John Deere).[5] On June 1, 2022, the Vermont Superior Court issued a default judgment against Debtor in the principal amount of $10,715.57, plus pre-judgment interest, costs, and attorney's fees, for a total judgment amount of $12,080.16.[6] Under Vermont law, post-judgment interest accrues at 12% per annum from the date of judgment.[7] Interest continued to accrue at that rate until August 18, 2025 when Debtor filed his chapter 7 petition (the Petition Date), which operated as an automatic stay against continued interest accrual.[8] As of the Petition Date, the judgment amount had grown to a total balance of $16,739.58 (the Judgment).[9]

The Court notes this Judgment amount differs from the amount used by Movant.[10] Movant's calculations failed to account for accrual of interest between the Judgment date and the Petition Date. "In order to determine whether a lien impairs an exemption, the Bankruptcy Court must calculate the value of the lien."[11] The Court's independent calculation of the lien amount revealed Debtor's omission of the post-judgment, pre-petition interest.

In addition to the Judgment, John Deere obtained a summons for trustee process against Debtor's checking account at Community Bank, N.A (the Trustee Process Order).[12] Community Bank disclosed to the Superior Court that Debtor had $1,562.37 in the affected checking account.[13] Community Bank continues to hold these funds pending further order of the Superior Court.[14]

The Motion followed, which asserts both the Judgment and the Trustee Process Order are avoidable in their entirety under § 522(f).[15]

## DISCUSSION

Debtor "may avoid the fixing of a lien on an interest of the debtor in property to the extent that such

---

[5] *John Deere Financial, FSB v. Moulton*, No. 22-cv-00796 (Vt. Super. Ct. 2022).

[6] ECF 6 at 10.

[7] 12 V.S.A. § 2903(c).

[8] 11 U.S.C. § 362(a)(6).

[9] Annual interest on the lien can be calculated by multiplying the judgment amount by 0.12. This equals 1,449.6192. Daily interest can be calculated by dividing 1,449.6192 by 365.25 (which accounts for the leap day that occurred on February 29, 2024). This equals $3.9688, which is the daily amount of interest that accrues on the judgment amount. There were 1,174 days between the judgment date and the petition date. Multiplying the daily interest by the total amount of days between judgment and petition, the Court finds a total of $4,659.42 has accrued on the judgment amount. When added to the initial $12,080.16 balance, this equals $16,739.58.

[10] ECF 6 at 2.

[11] *In re Armenakis*, 406 B.R. 589, 617 (Bankr. S.D.N.Y. 2009) (*citing In re Wilding*, 475 F.3d 428, 432 (1st Cir. 2007).

[12] *Id.* at 3. *See also* 12 V.S.A. §§ 3011 *et seq.*; Vt. R. Civ. P. 4.2.

[13] ECF 6 at 16.

[14] *Id.* at 3.

[15] Unless otherwise indicated, all statutory references are to title 11 of the United States Code (the Bankruptcy Code).

2

lien impairs an exemption to which the debtor would have been entitled under [§522(b)], if such lien is a judicial lien, other than a judicial lien that secured a debt of the kind that is specified in § 523(a)(5)."[16]

A lien impairs an exemption to the extent the sum of—

    (i)    The lien;
    (ii)    All other liens on the property; and
    (iii)    The amount of the exemption that the debtor could claim if there were no liens on the property;

exceeds the value that the debtor's interest in the property would have in the absence of any liens.[17] First, the Court must determine whether John Deere's claims constitute judicial liens, other than those specified under § 523(a)(5). The Court will then use this formula to calculate the extent to which John Deere's liens impair Debtor's exemptions.

### I. The Judgment

#### a. Does the Judgment constitute a lien on the Property?

"A final judgment issued in a civil action…shall constitute a lien on any real property of a judgment debtor if recorded as provided in this chapter."[18] Recording a judgment lien involves "filing a copy of the judgment with date when it became final, certified by the clerk of the court issuing the judgment. The certification shall be recorded by the town clerk in the land records.[19]

The Judgment issued in a civil action.[20] The Judgment became final on July 1, 2022.[21] The Judgment was recorded in volume 96 of the land records by the Morgan Town Clerk's Office on August 21, 2023.[22] The Judgment therefore constitutes a judicial lien (the Judgment Lien). It is not excluded from the impairment analysis by § 523(a)(5), which refers to domestic support obligations. Accordingly, the Judgment Lien is a judicial lien which can be avoided to the extent it impairs an exemption to which Debtor is entitled under § 522(f).

---

[16] § 522(f)(1)(A).

[17] § 522(f)(2)(A).

[18] 12 V.S.A. § 2901.

[19] 12 V.S.A. § 2904.

[20] This is indicated from the fact the judgment was issued by the Civil Division of the Vermont Superior Court and is further indicated by the docket number 22-**cv**-00796 (emphasis added).

[21] ECF 6 at 10.

[22] *Id*.

3

**b. What is the sum of the Judgment Lien, all other liens on the property, and the exemption Debtor could claim in the Property?**

The Judgment Lien impairs Debtor's exemption to the extent the sum of the Judgment Lien, all other liens on the property, and the amount of exemption Debtor could claim absent any liens exceeds the value of Debtor's interest absent any liens. As calculated above, the value of the Judgment Lien is $16,739.58. The only other lien encumbering Debtor's residence is a mortgage held by North Country FCU, with a balance of $44,968.77.[23]

In the Motion, Debtor calculated $125,000 as the amount of the homestead exemption he could claim absent any liens.[24] Debtor claimed a homestead exemption on his signed Schedule C, which carries a maximum exemption of $125,000.[25] After an evidentiary hearing on the Motion, Debtor filed a Supplement.[26] In his Supplement, Debtor added a $4,465.00 wildcard exemption to this figure.[27] To support this added exemption, Debtor attached an Amended Schedule C, showing an additional $4,265.00 exemption in the Property under 12 V.S.A. § 2740(7).[28] However, that Amended Schedule C remains unsigned, and any amendment filed in this Court must be verified.[29]

Without Debtor's verification, this Amended Schedule C is not effective, and the Court cannot use it to determine whether the wildcard exemption is available. Therefore, Debtor could only claim $125,000 in exemptions absent any liens. The sum of the Judgment Lien, all other liens, and the maximum exemption allowable in the absence of liens is $186,708.35.[30]

---

[23] *Id*. at 2; ECF 7 at 4.

[24] ECF 6 at 1.

[25] ECF 7; 27 V.S.A. § 101.

[26] ECF 10.

[27] *Id*.

[28] Debtor does not address the $200 disparity between the exemption claimed on the Supplement and the exemption claimed on the Amended Schedule C.

[29] Fed. R. Bankr. P. 1008.

[30] Value of lien ($16,739.58) + Value of all other liens on property ($44,968.77) + Maximum exemption allowable ($125,000) = $186,708.35.

4

### c. Does the Judgment Lien impair an exemption?

The Judgment Lien impairs Debtor's exemptions to the extent $186,708.35 exceeds *the value of Debtor's interest in the property* absent any liens. Debtor owns the Property in fee simple,[31] so an accurate value of the Property is integral to the impairment analysis.

The value of Debtor's interest in the Property absent any liens remains unclear. The tax assessed value from the Town of Morgan is $197,800.[32] Debtor argues the Town overvalues the Property, and the Property's actual value is around $160,000.[33] In support of his position, Debtor argues the property needs substantial repairs, yet fails to provide evidence of the amount of those repairs to support his claimed value.[34] Given the material difference in these valuations, the Court set an evidentiary hearing to determine the value of the Property.[35] Debtor provided the tax assessment, and testified as to the extent of repairs needed, but proffered no evidence of the cost estimates to address the repairs and how he derives a value of $160,000 for the Property as a whole. While Debtor's testimony constitutes some evidence of value, absent a basis of how he arrived at the $160,000 purported value, the Court finds his testimony lacking. Tax assessors are required by state law to appraise properties at their fair market value.[36] Debtor had a statutory right to contest the assessed value if he felt it was inaccurately high, which he failed to exercise.[37]

During the hearing, Debtor's counsel argued the Common Level of Appraisal (CLA) supports Debtor's argument that the assessed value by the Town of Morgan is higher than the fair market value of

---

[31] ECF 1 at 10 (Schedule A/B, 1.1).

[32] ECF 6 at 11.

[33] *Id.* at 1.

[34] *Id.*

[35] Using a $160,000 property value, Debtor calculated the extent of the impairment to be $22,048.16, permitting him to avoid the entire lien. If the property value were $37,800 higher, it would extinguish the entire impairment, and the lien would not be avoidable. Under § 105(a), the Court finds this calculation "necessary…to carry out the provisions of [the Bankruptcy Code]," specifically § 522(f).

[36] 32 V.S.A. § 4041. *See also United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 242 (2002) ("It is well established in the tax law that an assessment is entitled to a legal presumption of correctness.").

[37] Audio Recording of Hearing, Jan. 27, 2026, at 15:24-15:36; *see also* 32 V.S.A. § 4111(g).

5

the Property.[38] However, no evidence of the CLA was submitted to the Court. The CLA is derived by the Department of Taxes (through submission of a property transfer tax return with the Department of Taxes on every real property conveyance) to determine the listed-value-to-sales-price ratios for all market sales and applying the ratios to the grand list. Vermont municipalities do not re-appraise properties each year, the CLA acts as a yearly adjustment factor.[39] Because no evidence of the CLA was presented to the Court, the Court must determine whether it may appropriately take judicial notice of the CLA factor in the Town of Morgan.

The Court may take judicial notice of an adjudicative fact "that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[40] This can be done *sua sponte*, and it can happen at any time.[41]

Courts may only take judicial notice of adjudicative facts, not legislative facts.[42] Adjudicative facts are simply the facts of the particular case.[43] "When [a court] finds facts concerning immediate parties – what the parties did, what the circumstances were, what the background conditions were – the [Court] is performing an adjudicative function, and the facts may conveniently be called adjudicative facts."[44] Legislative facts, on the other hand, are those which have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body.[45] "When [a court] wrestles with a question of law or policy, it is acting legislatively, just

---

[38] Audio Recording of Hearing, Jan. 27, 2026, at 16:31-17:15.

[39] *Boivin v. Town of Addison*, 2010 VT 67 ¶ 12, 5 A.3d 897, 901, 188 Vt. 571, 575 (Vt. 2010).

[40] Fed. R. Evid. 201(b)(2).

[41] Fed. R. Evid. 201(d), (c)(2).

[42] Fed. R. Evid. 201(a).

[43] *United States v. Hernandez-Fundora*, 58 F.3d 802, 811 (2d Cir. 1995).

[44] Kenneth Culp Davis, *An Approach to Problems of Evidence in the Administrative Process*, 55 HARV. L. REV. 364, 402 (1942). This law review article coined the terms "adjudicative fact" and "legislative fact" as they are used in the Federal Rule. *Hernandez-Fundora*, 58 F.3d at 811.

[45] *Hernandez-Fundora*, 58 F.3d at 811.

6

as judges have created the common law through judicial legislation, and the facts which inform its legislative judgment may conveniently be denominated legislative facts."[46]

Courts "generally [have] the discretion to take judicial notice of internet material," as the authenticity of websites is not subject to reasonable dispute.[47] The Second Circuit has taken judicial notice of facts "from official government websites, including executive orders…as they are accessible on the State of New York's website."[48] The Northern District of New York has taken judicial notice of facts derived from websites for New York's economic development financing entities,[49] as well as the website for the National Cancer Institute.[50] The Western District of New York has taken judicial notice of facts derived from the U.S. Patent and Trademark Office's website.[51]

The Court finds the CLA constitutes an adjudicative fact, since it relates to the circumstances and background conditions informing Debtor's ability to avoid John Deere's lien.[52] It is also not subject to reasonable dispute. The Court was able to accurately and readily determine the CLA from the Vermont Department of Taxes,[53] whose accuracy as to the proper formula for assessing property taxes cannot reasonably be questioned. Accordingly, the Court takes judicial notice that the CLA in Morgan, Vermont is 106.12%. Once applied to the assessment of Debtor's homestead, the value of the Property is reduced to $186,392.76.

Based upon the record before the Court, the Court is persuaded the assessed value of the Property to be high and thus determines the assessed value should be reduced to reflect the CLA.

---

[46] Davis, *supra* note 43.

[47] *Boarding Sch. Rev., LLC b. Delta Career Educ. Corp.*, 2013 WL 6670584, at *1 n.1 (S.D.N.Y. 2013).

[48] *Rynasko v. New York Univ.*, 63 F.4th 186, 191 n.4 (2d Cir. 2023) (internal citations omitted).

[49] *Dark Storm Indus., LLC v. Cuomo*, 471 F.Supp.3d 482, 490 n.4 (N.D.N.Y. 2020).

[50] *Smith v. Fricke*, 635 F.Supp.3d 152, 165 (N.D.N.Y. 2022).

[51] *MPC Franchise, LLC v. Tarntino*, 19 F.Supp.3d 456, 463 n.21 (W.D.N.Y. 2014).

[52] Davis, *supra* note 43.

[53] *Equalization Study*, VERMONT DEP'T OF TAXES, https://tax.vermont.gov/municipalities/reports/equalization-study [https://perma.cc/8W73-JD9J] (last visited Jan. 28, 2026).

### d. What is the extent of impairment?

"A lien shall be considered to impair an exemption to the extent that the sum of the lien; all other liens on the property; and the amount of the exemption that the debtor could claim if there were no liens on the property exceeds the value that the debtor's interest in the property would have in the absence of any liens."[54] The value of John Deere's lien is $16,739.58. The only other lien on the property is a mortgage in the amount of $44,968.00. If there were no liens on the property, Debtor could claim a $125,000.00 homestead exemption.[55] The Property is worth $186,392.76. Debtor has a fee simple interest in the Property, so his interest in the property absent any liens would be $186,392.76.[56]

Under § 522(f)(2)(A), the Court makes the following calculation as to the extent of impairment:

| The sum of the John Deere Lien, *plus* | $16,739.58, *plus* |
|---|---|
| The sum of all other liens on the property, *plus* | $44,968.00, *plus* |
| Amount of exemption Debtor could claim, *equals* | $125,000.00, *equals* |
| Subtotal, *minus* | $186,708.35, *minus* |
| Debtor's interest in property absent liens, *equals* | $186,392.76, *equals* |
| **The extent of impairment** | **$315.59** |

The John Deere lien impairs Debtor's exemptions to the extent of $315.59. Therefore, "Debtor may avoid the fixing of [the] lien" to that extent.[57] This leaves a balance of $16,423.99 remaining on the John Deere lien. John Deere shall retain this balance as a secured claim against the Property.

## II.     The Trustee Process Order

The Bankruptcy Code defines a "lien" as an "interest in property to secure payment of a debt or

---

[54] § 522(f)(2)(A).

[55] Debtor claims state and federal nonbankruptcy exemptions. [ECF 7]; *see also* § 522(b)(3). As to this property, Debtor could claim a "homestead" exemption of $125,000, 27 V.S.A. § 101.

[56] ECF 1 at 10 (Schedule A/B, 1.1).

[57] § 522(f)(1).

8

performance of an obligation."[58] Such interest is a "judgment lien" when it is "obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding."[59] Under Vermont law, a trustee process order is used "to attach goods, effects, or credits of the defendant in the hands of a third person for the purpose of securing satisfaction of any adjustment for damages and costs."[60]

John Deere obtained the Trustee Process Order to collect on its judgment against Debtor in the Superior Court. The Trustee Process Order grants John Deere an interest in Debtor's checking account deposits to secure payment of the judgment. This interest was obtained by a thorough legal process in the Superior Court, which began with a judgment issued against Debtor, and culminated in a series of post-Judgment Trustee Process Hearings before that court.

The Trustee Process Order is therefore a judicial lien as defined by § 101(36) and § 522(f)(1)(A). It does not secure a domestic support obligation as provided under § 523(a)(5), so it is not excluded from the avoidance analysis.[61] Accordingly, the Trustee Process Order is a judicial lien which can be avoided to the extent it impairs an exemption to which Debtor is entitled.

The Trustee Process Order impairs Debtor's exemption to the extent the sum of the Trustee Process Order, all other liens on the property, and the amount of exemption Debtor could claim absent any liens exceeds the value of Debtor's interest absent any liens. The value of the Trustee Process Order is the balance of Debtor's personal checking account with Community Bank, N.A.: $1,562.37. There are no other liens encumbering the checking account. In the absence of any liens, Debtor could claim the entire account balance as exempt.[62] The sum of the Trustee Process Order, all other liens, and the maximum exemption allowable in the absence of liens is $3,124.74.[63] The Trustee Process Order impairs Debtor's exemption to

---

[58] § 101(37).

[59] § 101(36).

[60] Vt. R. Civ. P. 4.2(a).

[61] § 522(f)(1)(A).

[62] *See* ECF 7; 12 V.S.A. § 2740(7).

[63] Value of lien ($1,562.37) + Value of all other liens on property ($0.00) + Maximum exemption allowable ($1,562.37) =

9

the extent this figure exceeds the value of Debtor's interest in the property absent any liens.

Under § 522(f)(2)(A), the Court makes the following calculation as to the extent of impairment:

| | |
|---|---|
| The sum of the Trustee Process Order, *plus* | $1,562.37, *plus* |
| The sum of all other liens on the property, *plus* | $0.00, *plus* |
| Amount of exemption Debtor could claim, *equals* | $1,562.37, *equals* |
| Subtotal, *minus* | $3,124.74, *minus* |
| Debtor's interest in property absent liens, *equals* | $1,562.37, *equals* |
| **The extent of impairment** | **$1,562.37** |

The Trustee Process Order impairs Debtor's exemptions to the extent of $1,562.37. Therefore, "Debtor may avoid the fixing of [the] lien" to that extent.[64] This is the entire balance of the lien, so the Trustee Process Order is avoided in its entirety.

## CONCLUSION

For the reasons set forth above, the Motion to Avoid Lien is **GRANTED IN PART** and **DENIED IN PART**. Debtor may avoid the fixing of the Judgment lien to the extent of $315.59, leaving a balance on that lien of $16,423.99, which John Deere shall retain as a secured claim. The Trustee Process Order is avoided in its entirety. This memorandum of decision constitutes the Court's findings of fact and conclusions of law.

February 6, 2026  
Burlington, Vermont

*Heather Z. Cooper*  
Heather Z. Cooper  
United States Bankruptcy Judge

---

$3,124.74.

[64] § 522(f)(1).

10